UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY TURNER,

                         Plaintiff,                  Civil Action No. 18-11982
                                                     Honorable Avern Cohn
          v.                                   Magistrate Judge David R. Grand

JODI DEANGELO, *et al.*,

                         Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS DEANGELO'S AND GODFREY'S MOTIONS FOR SUMMARY JUDGMENT [11, 15] AND TO DISMISS PLAINTIFF'S CLAIMS AGAINST THOSE DEFENDANTS WITHOUT PREJUDICE

       This is a prisoner civil rights case in which *pro se* plaintiff Jeffrey Turner ("Turner") makes disturbing allegations about being repeatedly sexually assaulted by other inmates while he was incarcerated at the Woodland Correctional Facility ("WCC")[1] between April 15, 2017 and January 9, 2018. Amongst the various defendants he has sued in this action, he most directly blames four unidentified corrections officers (the "Unidentified Officer Defendants") for the assaults, claiming that they "routinely" gave the assailants access to his cell so that they could sexually assault him. Turner also names as a defendant an unidentified nurse (the "Unidentified Nurse Defendant"), who he claims "verbally questioned" him after he reported one of the sexual assaults, but never physically examined him or gave him a "rape test." Finally, he sues defendants Jodi DeAngelo ("DeAngelo") and Melissa Godfrey ("Godfrey"), both of whom worked at WCC during the time

---

[1] Turner's complaint identifies two different prisons at which the alleged events in question took place: first, he writes that "the events complained of" took place at Handlon Correctional Facility in Ionia, Michigan. (Doc. #1 at 1). But, in the facts section of his complaint, he alleges that the events in question took place while he was housed at WCC, where the two named defendants were employed. (*Id.* at 3-5). Presently, Turner is housed at the Macomb Correctional Facility, in Macomb, Michigan.

1

in question in supervisory capacities. Specifically, Turner alleges that DeAngelo, as WCC's Warden, "was responsible for training his staff and ensuring Plaintiff's wellbeing," and that Godfrey, as a Captain at WCC, "was responsible for properly training staff and investigating PREA [Prison Rape Elimination Act of 2003, 42 U.S.C. 15601 et seq. (the "PREA")] complaints." Turner also alleges that each one was a "respondent" to one of his grievances about the alleged sexual assaults.

Pursuant to 42 U.S.C. § 1983, on June 22, 2018, Turner filed his complaint against DeAngelo, Godfrey, the Unidentified Officer Defendants, and the Unidentified Nurse Defendant, alleging violations of his rights under the Eighth and Fourteenth Amendments of the United States Constitution and the PREA. Now before the Court are separate motions for summary judgment filed by the only two named defendants, DeAngelo and Godfrey on November 5, 2018, and January 2, 2019, respectively. (Docs. #11, #15). Turner filed response briefs on January 29, 2019, and February 11, 2019, respectively. (Docs. #20, #21). Neither DeAngelo nor Godfrey filed a reply.[2]

The undersigned was referred all pretrial matters, including the two pending motions for summary judgment, on January 8, 2019, pursuant to 28 U.S.C. § 636(b)(1). (Doc. #16). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

---

[2] On July 22, 2019, Turner filed a one-page document that merely states, "I want to dismiss my claim on my case cv 18-11892 against Defendant Jodi DeAngelo and Defendant Godfrey." (Doc. #23). The document is signed by Turner, and the return envelope indicates that Turner mailed it from his current place of incarceration. (*Id.*). A few hours later, also on July 22, 2019, Defendants DeAngelo and Godfrey filed a "Response to Plaintiff's Motion to Dismiss," in which they simply state that, pursuant to Fed. R. Civ. P. 41(a)(1), they "concur in Plaintiff's request to have this action dismissed in its entirety." (Doc. #24).

**I.     REPORT**

   **A.  Background**

On June 22, 2018, Turner filed his complaint against DeAngelo, Godfrey, the Unidentified Officer Defendants, and the Unidentified Nurse Defendant. (Doc. #1). As set forth above, Turner's complaint contains graphic and disturbing allegations that he suffered repeated sexual abuse from other inmates while he was incarcerated at WCC between April 15, 2017 and January 9, 2018. Specifically, he alleges that "unidentified corrections officers provided other prisoners with entry to his single man cell while he was asleep for the express purpose of allowing them to forcefully sodomize him." (*Id.* at 3). He further claims that due to his nighttime medication, he "was unconscious during the attacks and did not realize what had happened to him until he woke up with a sore bloody rectum and dried semen stains running down his leg." (*Id.*).

Turner alleges that he "first reported the incident on May 17, 2017, and was taken to medical department in the prison." (*Id.*). However, he does not identify the person to whom he made his report. Turner claims that over "the next few months the unidentified corrections officers that worked the housing unit where [he] was assigned, routinely allowed other prisoners to come into [his] cell and sexually assault him anally." (*Id.*).

Nowhere in Turner's complaint does he allege that DeAngelo or Godfrey were among the prison officials responsible for allegedly opening his cell door to his abusers. Instead, Turner makes only broad allegations against DeAngelo and Godfrey, claiming, in wholly conclusory fashion, that they are legally responsible for the alleged assaults due to their "supervisory" positions within WCC. Indeed, the only factual allegations in Turner's complaint that reference defendants DeAngelo and Godfrey are the following:

> 4)     Defendant DeAngelo is the Warden [] of [WCC] and at all times relevant to this complaint was responsible for training his staff and ensuring

> [Turner's] wellbeing. DeAngelo also was the Respondent to [Turner's] Step II Grievance Appeal.
>
> 5) Captain Godfrey is a supervisory employee of the MDOC and at all times relevant herein was assigned at WCC as a Captain, was the Respondent to [Turner's] Step I Grievance and was responsible for properly training staff and investigating PREA complaints.
>
> * * *
>
> 8) Defendants Godfrey and DeAngelo is alleged to have derelicted their duties regarding PREA violations and failed to adequately protect [Turner] while acting under the color of law.
>
> * * *
>
> 19) … Defendants DeAngelo, Godfrey, and four unknown corrections officers failed in their duty to adequately protect [Turner] from uninvited sexual abuse prior to and after becoming aware that [Turner] was being sexually abused thereby causing unnecessary suffering and pain to [Turner].

(*Id.* at ¶¶ 4, 5, 8, 19).

Turner also offers a slew of sweeping and conclusory legal terms to characterize the defendants' alleged conduct. For instance, he asserts, "each of the defendants named herein (both collectively and individually) acted spitefully or wantonly, with active and constructive knowledge of a foreseeable injury and substantial risk of further sexual assaults against [Turner] so as to be tantamount to a state of mind that evinces a willingness that such injury and unnecessary suffering would occur" and "[a]ll of the named Defendants acted intentionally, wantonly and in reckless disregard for [Turner's] constitutional rights to humane living conditions and to be free from unnecessary infliction of pain." (*Id.* at ¶¶ 17, 22).

Turner attached to his complaint a number of grievance-related documents. It appears that Turner filed a grievance while at WCC, which was assigned Grievance No. WCC-2017-11-0510-17I (the "WCC Grievance"). (*Id.* at 9). Although Turner did not attach his initial Step I grievance form to the complaint, he did attach the Step I response, which is signed by defendant Godfrey, as

4

well as his Step II appeal and the Step II response, the latter of which is signed by defendant DeAngelo. (*Id.* at 10-11). DeAngelo has provided the Step I grievance form and the Step III response that Turner failed to attach to his complaint. (Doc. #11-3 at 7, 10). In the section of the Step I grievance form asking Turner to "State problem clearly", he wrote only, "neclet [sic] abandment [sic] edujet [sic] nealiance [sic] of a sexuall [sic] abus [sic]," which can reasonably be interpreted as vague assertions of "neglect," "abandonment," and "negligence" in connection with unspecified sexual abuse. (*Id.* at 10). In the portion of the Step I grievance form asking Turner to state "What attempt did you make to resolve this issue prior to writing this grievance," Turner wrote that on October 13, 2017, he "[w]ent to ask to talk to PREA coordinator and inspector but they said no." (*Id.*). Turner indicates that the "date of [the] incident" being grieved is October 13, 2017, and that he drafted the grievance on October 28, 2017. (*Id.*).

Turner also attached to his complaint a document entitled "Step I Grievance." (Doc. #1 at 7-8). This document cannot be part of Turner's WCC Grievance because it refers to incidents taking place "between 4/16/17 and 1/9/18," and Turner filed his WCC Grievance on October 28, 2017. Rather, it appears to be an initiating document for a separate "PREA Grievance" that Turner filed on January 13, 2018, and the Court will refer to it as Turner's "PREA Grievance." (*Id.* at 15). Although Turner showed that Godfrey and DeAngelo were involved in responding to Turner's WCC Grievance, he made no showing (or even allegation) that either one of these defendants had any involvement in the handling of his PREA Grievance. Moreover, Turner's PREA Grievance does not reference DeAngelo or Godfrey. (*Id.* at 7-8).

Defendants DeAngelo and Godfrey filed separate motions for summary judgment on November 5, 2018, and January 2, 2019, respectively, in which they advance identical arguments. (Docs. #11, #15). Turner filed separate responses to these motions. (Docs. #20, #21).

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotations omitted). To survive summary judgment, a non-moving party also "cannot rely on conjecture or conclusory accusations." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

Although captioned as a motion for summary judgment, Defendants' first argument – that the Court should not consider the merits of Turner's claims against them because he failed to properly exhaust his administrative remedies – is more properly construed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. *Burley v. Abdellatif*, No. 16-cv-12256, 2017 WL 3528927, at *4-5 (E.D. Mich. July 18, 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "'is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements." *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *3 (E.D. Mich. June 25, 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also Twombly*, 550 U.S. at 555. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts

7

to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C. Analysis**

In their motions for summary judgment, both DeAngelo and Godfrey argue that Turner failed to exhaust his administrative remedies against them.[3] For the reasons discussed below, the Court agrees that dismissal is appropriate on this basis, as well as on the basis of Turner's expressed intent to voluntarily dismiss his claims against these two individuals. Thus, the Court recommends that Turner's claims against DeAngelo and Godfrey be dismissed without prejudice.

> *1. Turner's Claims Against Defendants DeAngelo and Godfrey Should be Dismissed Pursuant to Fed. R. Civ. P. 41(a)(2)*

Fed. R. Civ. P. 41(a) pertains to the voluntary dismissal of actions. It provides, in relevant part, that "the plaintiff may dismiss an action without a court order by filing … (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(ii). If Rule 41(a)(1)'s requirements are not satisfied, a plaintiff may also voluntarily dismiss an action "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Here, the Court should dismiss Turner's claims without prejudice under Rule 41(a)(2).

As noted above, *supra* at 2, n.2, on July 22, 2019, Turner filed a one-page document that merely states, "I want to dismiss my claim on my case cv 18-11892 against Defendant Jodi DeAngelo and Defendant Godfrey." (Doc. #23). The document is signed by Turner, and the return envelope indicates that Turner mailed it from his current place of incarceration. (*Id.*). A few hours

---

[3] Both DeAngelo and Godfrey also argue that Turner failed to allege that they were "personally involved" in unconstitutional conduct as is required to impose liability under Section 1983, and that they are entitled to Eleventh Amendment and qualified immunity, as they were state employees acting in official capacity at all relevant times. Because they have concurred in Turner's request for voluntary dismissal, however, the Court need not address the merits of these arguments.

8

later, Defendants DeAngelo and Godfrey filed a "Response to Plaintiff's Motion to Dismiss," in which they simply state that, pursuant to Fed. R. Civ. P. 41(a)(1), they "concur in Plaintiff's request to have this action dismissed in its entirety." (Doc. #24). But, the parties have not filed a "stipulation of dismissal," and whereas DeAngelo and Godfrey assert that they concur in Turner's request to dismiss this action "*in its entirety*," Turner did not seek that relief, and instead asked only to dismiss his claims "against *Defendant Jodi DeAngelo and Defendant Godfrey*". (Docs. #23, #24) (emphasis added).

Thus, rather than a dismissal under Rule 41(a)(1)(ii), the Court recommends dismissing Turner's claims against Defendants DeAngelo and Godfrey under Rule 41(a)(2). As indicated in the Rule, that dismissal should be "without prejudice." Fed. R. Civ. P. 41(a)(2).

### 2. *Turner's Claims Against Defendants DeAngelo and Godfrey Should be Dismissed for Failure to Exhaust His Administrative Remedies*

Even if the Court finds that dismissal of Turner's claims against DeAngelo and Godfrey under Rule 41(a)(2) is not warranted, those claims should still be dismissed without prejudice because Turner failed to properly exhaust them. Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (the "PLRA"), a prisoner may not bring an action "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to

exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (Doc. #11-2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶ B). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶ P, V). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id.* at ¶ BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (Id. at ¶ FF). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ B).

Here, it is undisputed that Turner filed the WCC Grievance, and pursued it through all three steps of the MDOC's grievance process. (Doc. #11-3 at 4). However, evidence supplied by Defendants establishes that this was the only grievance Turner filed at WCC which he pursued through all three steps, and therefore the only grievance that could potentially be properly

exhausted against those Defendants related to the subject matter of this litigation.[4]  (Doc. #11-3). Defendants Godfrey and DeAngelo go on to argue that Tuner's claims against them should be dismissed for multiple reasons, including (1) Turner did not properly exhaust the WCC Grievance because he failed to name Defendants Godfrey and DeAngelo in that Grievance, in violation of the Policy's requirement that the grievant include the "names of all those involved in the issue being grieved" (Doc. #11-2 at ¶ R), and (2) the Defendants' role of merely responding at different steps of the grievance process cannot subject them to Section 1983 liability.  The Court agrees.

Turner's WCC Grievance makes vague references to "neglect," "abandonment," and "negligence" in connection with unspecified sexual abuse.  (Doc. #11-3 at 10).  In the WCC Grievance, he asserts that on October 13, 2017, he "[w]ent to ask to talk to PREA coordinator and inspector but they said no."  (*Id.*).  Turner also indicates that the "date of [the] incident" being grieved was the same date – October 13, 2017.  (*Id.*).  Clearly, this WCC Grievance does not name Warden DeAngelo, and although Turner vaguely alleges in his complaint that Godfrey "was responsible for . . . investigating PREA complaint," Godfrey avers more specifically in an affidavit, "I am not the PREA Coordinator at WCC," an averment that Turner did not contest in his response brief.  (Docs. #1 at ¶ 5; #15-2 at ¶ 5; #21).  In sum, Turner's WCC Grievance grieved the fact that on October 13, 2017, he went to the "PREA coordinator and inspector" to discuss alleged sexual abuse and was rebuffed.  That particular issue did not involve Godfrey or DeAngelo, who were involved only in responding to the WCC Grievance at Steps I and II, respectively.

---

[4] Turner seems to have misapprehended the Defendants' argument, when he asserts that his "Grievance Report [] completely contradicts the defendant's claim that the Administrative Exhaustion process was never completed."  (Doc. #20 at 10).  Again, Defendants do not dispute that Turner pursued the WCC Grievance through all three steps in the MDOC's grievance process. Rather, as discussed below, they correctly assert that that particular Grievance did not exhaust any claims Turner may have had against them.

Because DeAngelo and Godfrey were not named (explicitly or implicitly) in the WCC Grievance, that grievance did not exhaust any claims Turner may have had against them. *See Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003) (prisoner does not properly exhaust his claim against a prison official "if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process…"). *See also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Because Turner's WCC Grievance failed to exhaust his alleged claims against DeAngelo and Godfrey, the Court should grant the summary judgment motions filed by Defendants DeAngelo and Godfrey, and dismiss Turner's claims against them without prejudice.[5]

## II. RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that the Court **GRANT** the summary judgment motions filed by Defendants DeAngelo and Godfrey **(Docs. #11, #15)**, and that Turner's claims against those Defendants be **DISMISSED WITHOUT PREJUDICE**.

Dated: August 5, 2019                                s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

---

[5] The Court also notes that the law is clear that the "mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). *See also Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (the "'denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.'"); *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Moreover, Lee may not base his claim against the individual defendants upon their denial of his administrative grievances. Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.").

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email and First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 5, 2019.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager
